Ms. Lisa Thompson The Morning News P.O. Box 7 Springdale, AR 72765-0007
Dear Ms. Thompson:
You have requested an Attorney General opinion, pursuant to A.C.A. §25-19-105(c)(3)(B), concerning the release of certain records under the Freedom of Information Act (FOIA) (A.C.A. § 25-19-101 et seq.).
You state that you have requested the following records from the City of Lowell:
• The personnel file of former City Attorney Jenni Cook
 • The transcript of a telephone conversation between Cook and a former police department employee
You presented the request for these records to various city officials, including the Chief of Police and the Mayor. Both the Chief of Police and the Mayor denied your request for the transcript on the grounds that this record was part of an internal investigation that did not lead to the suspension or termination of any employee. In addition, the Mayor declined to provide some records from the requested personnel file for the same reason. He agreed to provide the remainder of the records in the personnel file, after redactions had been made.
I am directed by law to issue my opinion as to whether the determination of the custodians of these records regarding their release is consistent with the FOIA. A.C.A. § 25-19-105(c)(3)(B).
RESPONSE
Summary
The Personnel File — Because I have not had the opportunity to review the requested personnel file, I cannot opine definitively concerning the releasability of any of the records contained therein. However, I will review the applicable standards that will govern the release of the records in the file.
The Transcript — The question of whether the transcript should be released will not depend upon whether the employees in question were suspended or terminated, but rather, will depend upon the contents of the transcript and upon the relative weight of the public's interest in that information and any privacy interest therein.
Discussion
The Personnel File
As indicated above, I have not had the opportunity to review the requested personnel file and therefore do not know what specific records the file contains. For this reason, I cannot opine definitively as to whether the records in the file should be released. I can, however, review the legal standards that will govern the release of the records contained in the file.
Personnel files typically contain records that can be classified either as "personnel records" or as "employee evaluation/job performance records." It is important to identify the correct classification of each record in the file, because the FOIA sets forth different tests to govern the releasability of the two types of records.
1. Personnel Records
Although the FOIA does not define the term "personnel records," as used therein, this office has consistently taken the position that "personnel records" are any records other than employee evaluation/job performance records (discussed below) that relate to the individual employee. See,e.g., Ops. Att'y Gen. Nos. 2004-178; 2003-336; 2003-055; 2002-085; 2001-154; 99-147. Under the FOIA, "personnel records" must be released unless their release would constitute a "clearly unwarranted invasion of [the employee's] personal privacy." A.C.A. § 25-19-105(b)(12).
The FOIA also does not define the phrase "clearly unwarranted invasion of personal privacy." However, the Arkansas Supreme Court has construed the phrase. In determining which disclosures constitute a "clearly unwarranted invasion of personal privacy," the court applies a balancing test. The court will weigh the interest of the public in accessing the records against the individual's interest in keeping the records private. SeeYoung v. Rice, 308 Ark. 593, 826 S.W.2d 252 (1992). If the public's interest outweighs the individual's interest, the release of the records will not constitute a "clearly unwarranted invasion of personal privacy." If there is little public interest in the information, the privacy interest will prevail if it is not insubstantial. Stilley v. McBride,332 Ark. 306, 965 S.W.2d 125 (1998). For example, the public has a legitimate interest in information such as public employees' salaries and the fact that those employees have successfully completed any training that is required for the job. See, e.g., Ops. Att'y Gen. Nos. 2001-172; 97-033. I have also previously opined that the public has a legitimate interest in records reflecting the sexual misconduct of public officials in situations involving sexual harassment. See Op. Att'y Gen. No. 2004-012. However, the public has little interest in the personal details of an employee's insurance coverage or in an employee's specific test scores on a training exam. See, e.g., Ops. Att'y Gen. Nos. 2004-167; 2002-160. The question of whether the release of any particular personnel record would constitute a clearly unwarranted invasion of personal privacy is always a question of fact. See, e.g., Ops. Att'y Gen. Nos. 2003-336; 2003-201; 2001-101; 98-001.
Accordingly, it will be necessary for the custodian of the requested personnel file to review and evaluate each personnel record that is contained in the file under the above described legal standard to determine whether it should be released.
Employee Evaluation/Job Performance Records
The FOIA does not define the term "employee evaluation or job performance record," as used therein, nor has the phrase been construed judicially. This office has consistently taken the position that any records that were created at the behest of the employer and that detail the performance or lack of performance of the employee in question with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records. See, e.g., Ops. Att'y Gen. Nos.2004-211; 2003-073; 98-006; 97-222; 95-351; 94-306; 93-055. The record must also have been created for the purpose of evaluating an employee.See, e.g., Op. Att'y Gen. No. 2004-012. Under the FOIA's applicable standard, employee evaluation/job performance records are exempt from disclosure to the public unless the following three conditions have been met:
 • There has been a final administrative resolution of any suspension or termination proceeding;
 • The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 • There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1).
You will note that a presupposition of the above three-part test is that the employee to whom the records relate was suspended or terminated. If the employee whose personnel file has been requested has never been suspended or terminated, that individual's evaluation/job performance records cannot be released. However, if the employee has been suspended or terminated, the records must be evaluated under the three-part test to determine their releasability. It should be noted that this office has consistently taken the position that a voluntary resignation — even when it is tendered for the purpose of resolving a termination grievance — does not constitute a termination for purposes of A.C.A. §25-19-105(c)(1). See, e.g., Ops. Att'y Gen. Nos. 2002-235; 2001-246; 98-188; 97-063. However, one of my predecessors has acknowledged that under certain facts, "a resignation tendered in the face of a more certain, impending termination could be deemed to be a forced, coerced or constructive termination for purposes of A.C.A § 25-19-105(c)(1)." See
Op. Att'y Gen. No. 97-063, citing Dobbins v. Everett, 2 Ark. App. 254,620 S.W.2d 309 (1981) (employee, who, faced with certain termination, took less severe, embarrassing and traumatic option of resignation rather than discharge, did not quit voluntarily and without good cause for purposes of employment compensation decision).
It is not clear from facts as you have presented them to me whether the employee whose personnel file you requested resigned, was terminated, or resigned under pressure in lieu of termination. It would be necessary for me to know these facts about the situation in order to determine whether any employee evaluation/job performance records in the individual's personnel file are releasable.
If the employee has been suspended or terminated (or possibly even constructively terminated), it will be necessary to determine whether there has been a final administrative resolution of that termination or suspension (i.e., whether any avenues of appeal remain open, see, e.g.,
Ops. Att'y Gen. Nos. 2004-212; 2003-381) and whether the requested records formed a basis for that termination or suspension. These are clearly questions of fact that can be readily determined. The terminated or suspended individual's employee evaluation/job performance records can be released only if those questions can be answered affirmatively, and if it is determined that there is compelling public interest in their disclosure.
The phrase "compelling public interest" is not defined in the FOIA. Clearly, the question of whether there is a "compelling public interest" in the release of particular records will depend upon all the facts and circumstances attendant to the particular case. Professors John Watkins and Richard Peltz, commentators on the FOIA, have provided some guidelines for determining whether such an interest exists. They state: "The nature of the problem that led to the suspension or termination undoubtedly bears on the `compelling public interest' question. . . ." Watkins and Peltz, The Arkansas Freedom of Information Act (m m Press, 4th Ed., 2004) at 205. Watkins and Peltz also point out: "The public's interest in disclosure is most likely compelling when the records reflect a breach of trust or illegal conduct by public employees. . . . However, the mere fact that an employee has been suspended or terminated does not mean that the records should be made public. If that were the case, the `compelling public interest' phrase would be redundant. . . ."Id. at 204-05. In this regard, Watkins and Peltz also point out that a general concern or interest in a particular matter does not suffice to constitute a compelling public interest. Id. at 206. They also note that the status of the employee, or "his rank within the bureaucratic hierarchy," may also be relevant in determining whether a "compelling public interest" exists. Id. (noting that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [evaluation records] of `rank-and-file' workers are at issue.")
In the final analysis, the question of whether there is a compelling public interest in particular records is a question of fact that the custodian of the records must determine in the first instance, considering all of the relevant information.
The custodian must evaluate each employee evaluation/job performance record that is contained in the personnel file, under the standards discussed above, to determine whether such records are releasable.
The Transcript
It is my opinion, as explained more fully below, that the transcript should not be classified as an employee evaluation/job performance record. Rather, it should be classified either as a "personnel record," subject to the balancing test discussed above, or as a "public record," not subject to any of the FOIA's exemptions from disclosure. I base this conclusion on the fact that the transcript is nothing more than the tape-recording, presented in a different medium. The tape-recording is either a personnel record or a public record. Therefore, the transcript is either a personnel record or a public record. Accordingly, because the transcript is not an employee evaluation/job performance record, its release is not contingent upon whether the employees in question were suspended or terminated.
I have previously opined that if a record was routinely created as a regular administrative practice and was not created as a part of an investigation of the employee, it does not constitute an employee evaluation/job performance record. See, e.g., Op. Att'y Gen. No.2001-191; 2001-123. Moreover, the fact that a previously created record is later used in an internal investigation of an employee does not transform the record into an employee evaluation/job performance record.See Ops. Att'y Gen. Nos. 2001-191; 96-257A; 96-168; 96-033. In addition, changing the medium in which a record is presented does not transform the record into a record of a different classification. I derive this conclusion from the following provision of the FOIA:
 (B) A citizen may request a copy of a public record in any medium in which the record is readily available or in any format to which it is readily convertible with the custodian's existing software.
A.C.A. § 25-19-105(d)(2)(B).
Clearly, the medium of a record does not determine its classification. The information you have provided to me unquestionably indicates that the tape-recording was created routinely as an administrative practice and not as a part of an internal investigation of any employee. For this reason, the tape-recording should not be classified as an employee evaluation/job performance record. Rather, it is properly classified either as a personnel record or as public record. Accordingly, the transcript of the tape-recording, which is simply the tape-recording presented in a different medium, is also classified either as a personnel record or as a public record.
In my opinion, the preferable view is that the transcript is a personnel record, because it is a record other than an employee evaluation/job performance record that relates to individual employees. See, e.g., Ops. Att'y Gen. Nos. 2004-178; 2003-336; 2003-055; 2002-085; 2001-154; 99-147. Its release, therefore, must be evaluated under the balancing test discussed previously. Again, the question of whether the public's interest in the information contained in the transcript outweighs any privacy interest therein is a question of fact that must turn on the contents of the transcript. I cannot make this determination, having not seen the transcript.
Even if the transcript is classified as a "public record," not subject to any of the FOIA's exemptions from disclosure, it must nevertheless be evaluated to determine whether any constitutionally-protected privacy interest would prevent its disclosure. This evaluation will be similar to the balancing test that is applied to personnel records. The Arkansas Supreme Court has recognized that the constitutional right of privacy can supersede the specific disclosure requirements of the FOIA. SeeMcCambridge v. City of Little Rock, 298 Ark. 219, 766 S.W.2d 909 (1989). The McCambridge court held that a constitutional privacy interest applies to matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed. In order for the transcript to be withheld from disclosure under the constitutional right of privacy, this three-part standard set forth by the McCambridge court must be met. If it can be determined factually that any information contained in the requested records rises to the level of constitutional protection by meeting the three prongs of test laid out by the McCambridge court, a determination must then be made as to whether the governmental interest in disclosure under the Act (i.e., the public's legitimate interest in the matter) outweighs the privacy interest in their non-disclosure. Again, this determination will be a factual one, based upon the available information. If it is determined that a privacy interest in the transcript outweighs the public's interest in it, the private information should be redacted from the transcript before it is released.[1]
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] I note that the information you have provided to me appears to indicate that the tape-recording has already been released to at least one requester. I presume that no redactions were made from the tape-recording.